IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEFON JOHNSON, JR., | : | |
| Plaintiff | : | |
| | : | No.  1:20-CV-0149 |
| v. | : | |
| | : | Judge Lanzillo |
| C.O. 1 LESKO, SGT. KEMP, SGT. MOOR, | : | |
| L.P.N. ANDRAKO, CO 4 GILL, LT. | : | Electronically Filed Document |
| HARDING, C.O. 1 BOOHER, C.O. 1 | : | |
| WILLCOX AND C.O. 1 TERMINE, | : | *Complaint Filed 07/23/20* |
| | : | |
| Defendants | : | |

**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

AND NOW, come Defendants Lesko, Kemp, Moor, Andrako, Gill, Harding, Booher, Willcox, and Termine ("Defendants"), by their attorneys, Phillip E. Raymond, Deputy Attorney General, Annamarie Truckley, Deputy Attorney General, and the Pennsylvania Office of Attorney General and submit the following Brief in Support of Defendants' Motion for Summary Judgment as follows:

**I.      STATEMENT OF THE CASE**

Plaintiff, Stefon Johnson, LW-6308, ("Plaintiff"), is a pro se inmate, currently in the custody of the Pennsylvania Department of Corrections ("DOC"). The events giving rise to the at-issue Complaint took place at the State Correctional Institution at Forest ("SCI-Forest"). Plaintiff's asserts in his Amended Complaint that Defendants were deliberately indifferent to Plaintiff's suffering and safety by denying Plaintiff meals over a roughly 8-10 day period and for utilizing excessive force against him in violation of his constitutional rights under the Eighth Amendment. [ECF 41]. The Defendants now move for summary judgment on certain grounds[1], specifically that

---

[1] Defendants will not move for judgement on Plaintiff's excessive force claim because the videos

Plaintiff has failed to exhaust his administrative remedies for any and all claims in the Amended Complaint by failing to request monetary or injunctive relief in any grievance related to the misconduct alleged. In the alternative, if this Court finds Plaintiff did exhaust his remedies, he failed to sufficiently allege the personal involvement of a number of Defendants.[2]

## II. STANDARD OF REVIEW

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Federal Rules of Civil Procedure 56(c). See also, Celotex Corporation v. Catrett, 477 U.S. 317, 325 (1986). In deciding a motion for summary judgment, the court construes all facts and inferences in the light most favorable to the non-moving party. See Pollack v. AT&T, 794 F.2d 860, 864 (3d Cir. 1986).

## III. MATERIAL FACTS NOT IN DISPUTE

The undisputed material facts in support of Defendants' Motion for Summary Judgment are set forth in Defendants' Concise Statement of Material Facts, which is being filed contemporaneously with this Motion per Local Rule 56.

---

of this incident do not capture the moment OC Spray was utilized, only the events afterwards. Similarly, Defendants will not move on Plaintiff's claims he was denied meals because factual disputes still exist with respect to these claims. Nevertheless, Defendants seek summary judgment on all claims for lack of proper exhaustion.

[2] The Defendants have prepared a Statement of Material Facts Not In Dispute ("SMF") and an Appendix of Attachments ("SMF Exhibits") thereto, which set forth the facts of this case in significant detail. Thus, no further exposition of the facts will be included herein, except as needed in the development of the legal issues below.

### IV.   ARGUMENT

#### A. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS IN THE AMENDED COMPLAINT BECAUSE PLAINTIFF PROCEDURALLY DEFAULTED HIS CLAIMS BY NOT REQUESTING MONETARY/INJUNCTIVE RELIEF IN ANY GRIEVANCE

There are a total of ten (10) grievances that implicate the allegations in the Amended Complaint that Plaintiff was denied/refused meals and was the subject of excessive force: Official Inmate Grievance #775095, Exhibit A; Official Inmate Grievance #775689, Exhibit B; Official Inmate Grievance #775898, Exhibit C; Official Inmate Grievance #776024, Exhibit D; Official Inmate Grievance #776030[3], Exhibit E; Official Inmate Grievance #776040, Exhibit F; Official Inmate Grievance #777142, Exhibit G; Official Inmate Grievance #778577, Exhibit H; Official Inmate Grievance #779477, Exhibit I; and Official Inmate Grievance #793257, Exhibit J. See also Exhibit K – grievance history and Exhibit L – Declaration of Lisa Reheer.

Despite filing numerous grievances, Plaintiff failed to request monetary damages and/or relief normally available from the courts in any grievance which is mandatory for seeking monetary and/or injunctive relief in a subsequent lawsuit. Indeed, Plaintiff in his Amended Complaint requests compensatory and punitive damages, as well as employment termination of all defendants involved. See [ECF 41, at 12]. His failure to seek monetary and/or injunctive relief in his various grievances results in the procedural default of any and all claims he currently brings in the instant lawsuit. Therefore, judgment should be entered on Defendants' behalf for this reason alone.

---

[3] Grievance No. 776030 was included in the Plaintiff's institutional grievance history, however it was not filed by the Plaintiff. The inclusion of the grievance was in error; however the Defendants include this grievance (redacted) to ensure the grievance record for the timeframe alleged in the Amended Complaint is facially complete. See Exhibit L – Declaration of Lisa Reheer

      The Prison Litigation Reform Act (PLRA) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a). The Supreme Court has held "that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." Porter v. Nussle, 534 U.S. 516 (2002). Exhaustion of administrative remedies in §1997e(a) cases is mandatory and no case may be brought until the inmate-plaintiff has exhausted all available administrative remedies. See Booth v. Churner, 206 F.3d 289, 300 (3d Cir. 2000) aff'd, 532 U.S. 73 (2001). Accordingly, "it is beyond the power of the court to excuse compliance with the exhaustion requirement." Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000). Further, The Third Circuit held that a prisoner must exhaust all available administrative remedies, regardless of whether the administrative process may provide the prisoner with the relief that he is seeking. Reno, 204 F.3d at 75.

      Proper exhaustion, in accordance with the DOC's grievance procedures, is required, or else the grievant has procedurally defaulted and failed to exhaust his administrative remedies. Woodford v. Ngo, 548 U.S. 81 (2006); Spruill v. Gillis, 372 F.3d 218, 232 (3d Cir. 2004). "The PLRA also 'require[s] proper' exhaustion, meaning that the inmate must follow the procedural requirements of the prison grievance system." Lock v. Nash, 150 Fed.Appx. 157, 159 (3d Cir. 2005) (citing Spruill, 372 F.3d at 228-231). "If the prisoner fails to follow the procedural requirements, then his claims are procedurally defaulted." Id. Importantly, Prison grievance procedures supply the yardstick for measuring procedural default. Spruill, 372 F.3d at 231.

      There are several requirements to filing a proper grievance in accordance with DC-ADM 804. See, generally, DC-ADM 804, Inmate Grievance System Procedures Manual § 1(A)(8)-(28).

For example, grievances must be "legible, understandable, and presented in a courteous manner" and must "include a statement of facts relevant to the claim." Id. § 1(A)(11). Grievances must also "include the date, approximate time, and location of the event(s) that gave rise to the grievance[;]" "identify individuals directly involved in the event(s)[;]" "state any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law[;]" and "request the specific relief sought," compensation or otherwise. Id. § 1(A)(11)(a)-(d).

In order to properly exhaust his or her administrative remedies, a plaintiff must be in "compliance with an agency's deadlines and other critical procedural rules...." Woodford, 548 U.S. at 90-91. The DOC's Grievance System Policy, DC-ADM 804, sets out a three-step grievance and appeals process. First, an inmate is required to legibly set forth all facts and identify all persons relevant to his claim in a grievance which will then be subject to "initial review." Spruill, 372 F.3d at 232, 233. Second, after the initial review by a grievance officer, the inmate must file an appeal to the Facility Administrator for a second level of review. Id. at p. 232. Finally, the inmate is required to file an appeal to the Secretary's Office of Inmate Grievances and Appeals ("the Secretary's Office"). Id.

DC-ADM 804 provides with regard to requesting relief in grievances, "the inmate *must* request the specific relief sought in his/her initial grievance if the inmate desires compensation or other legal relief normally available from a court." See Smith, 2018 WL 279363, at *3. In accordance with this requirement, the grievance form provides the following instruction: "State all relief that you are seeking." This mandatory language has been held by the Courts to require an inmate who seeks legal relief from a Court to state in the initial grievance what relief is sought (e.g. monetary relief) or else he has not properly exhausted administrative remedies as to any legal remedies not mentioned in that grievance. See Id. See also, Wright v. Sauers, 2017 WL 3731957

(W.D. Pa. 2017) affirmed by Wright v. Sauers, 729 Fed.Appx. 225 (3d Cir. 2018); Mobley v. Snyder, 2015 WL 5123909, at *7-9 (M.D. Pa. 2015) (finding plaintiff procedurally defaulted any claims for monetary damages by failing to request monetary relief in initial grievance); Collins v. Walsh, 2012 WL 3536803, at *3-4 (M.D. Pa. 2012) (observing, "[i]n cases where the inmate is seeking compensation, however, he must have requested this relief in his original grievance.").

The mandatory language in DC-ADM 804 quoted above was added to the policy in response to the Third Circuit's decision in Spruill, 372 F.3d at 233-34. In Spruill, the Third Circuit rejected an exhaustion defense based on the claim that an inmate must include a request for money damages in his grievance based on the discretionary language of the policy in effect at that time which stated, "The inmate may include a request for compensation or other legal relief normally available from a court." Since the decision in Spruill, the language of the policy has changed and courts interpreting the language of the policy after Spruill have found the requirement to include a request for compensation to be mandatory.

The following are individual grievances filed by the Plaintiff in this action:

- **Exhibit A – Grievance 775095**

Plaintiff filed this grievance on December 5, 2018. This grievance relates to the event on December 5, 2018 where Plaintiff alleges he was not fed after his cellmate related he was suicidal. The only relief he sought was "consequences" for Defendant Moore. See Exhibit A, at 1. There is no genuine dispute of material fact that Plaintiff did not request monetary or injunctive relief in this grievance.

- **Exhibit B – Grievance 775689**

Plaintiff filed this grievance on December 8, 2018. This grievance relates to events on December 8, 2018 where Plaintiff claims Defendant Kemp ordered him to move cells and that

thereafter he alleges Defendant Booher refused him a tray. He also alleged that on December 9, 2018 Defendants Booher and Lasko denied him trays. See Exhibit B, at 3. Plaintiff did not request monetary damages or relief normally available from the courts. Instead, he sought a loaf of bread and peanut butter and requested a camera be present every time he is fed. There is no genuine dispute of material fact that Plaintiff did not request monetary or injunctive relief in this grievance. Furthermore, grievance 775689 was rejected by the institution and not appealed any further, rendering this grievance unexhausted for purposes of the PLRA. See Exhibit K.

- **Exhibit C – Grievance 775898**

Plaintiff filed this grievance on December 11, 2018. This grievance relates to events on December 11, 2018 where Plaintiff asserts he spoke with Defendant Andracko regarding other officers denying him meals. The only relief Plaintiff requested was to be moved cells, have a camera present when he is given a meal tray, and peanut butter and jelly. There is no genuine dispute of material facts that Plaintiff did not request monetary or injunctive relief in this grievance.

- **Exhibit D – Grievance 776024**

Plaintiff filed this grievance on December 10, 2018. This grievance does not specifically implicate issues with not being fed and instead reflects an incident with an individual not named in this lawsuit. Plaintiff, however, does reference not being fed on December 8 and December 10 of 2018 and mentions that he had filed grievances to that effect. See Exhibit D, at 6. Even assuming this grievance implicates alleged misconduct against the named Defendants in this action, there is no genuine dispute of material fact that Plaintiff did not request monetary or injunctive relief in this grievance.

- **Exhibit E – Grievance 776030**

This grievance was mistakenly included in Plaintiff's grievance history and was not authored by the Plaintiff. Nevertheless, Defendants included this grievance to ensure completeness of Plaintiff's listed grievance record for the timeframe alleged in the Amended Complaint and have redacted the information of the inmate that filed it.

- **Exhibit F – Grievance 776040**

Plaintiff filed this grievance on December 12, 2018 alleging that as of that date he had been refused 13 meal trays by various DOC staff members. See Exhibit F, at 2. The only relief Plaintiff sought in this grievance was a cell move, a loaf of bread with peanut butter and jelly, and a camera in his cell. Id. There is no genuine dispute of material fact that Plaintiff did not request monetary or injunctive relief in this grievance. Furthermore, the record reflects that Plaintiff withdrew this grievance and did not pursue any appeals of this grievance through the DC-ADM 804 grievance procedure, rending this grievance unexhausted. See Exhibits K and L.

- **Exhibit G – Grievance 777142**

Plaintiff filed this grievance on December 17, 2018 regarding an occurrence on December 8, 2018 involving Defendants Booher and Kemp. Plaintiff alleged the two Defendants denied him a meal tray. See Exhibit G, at 2. There is no relief listed and there is no genuine dispute of material fact that Plaintiff did not request monetary or injunctive relief in this grievance. Furthermore, grievance 777142 was rejected by the institution and not appealed any further, rendering this grievance unexhausted for purposes of the PLRA. See Exhibit G, at 1, Exhibit K, at 2 and Exhibit L.

- **Exhibit H – Grievance 778577**

Plaintiff filed this grievance on December 27, 2018 regarding an occurrence on December 8, 2018 involving Defendants Booher and Kemp. Plaintiff alleged the two Defendants denied him a meal tray. See Exhibit H, at 1. The only relief requested was an "emergency separation from these officers." Id. There is no genuine dispute of material fact that Plaintiff did not request monetary or injunctive relief in this grievance.

- **Exhibit I – Grievance 779477**

Plaintiff filed this grievance on January 1, 2019 alleging that on December 15, 2018 an officer, later identified as Defendant Moore, sprayed OC Spray into his cell. See Exhibit I, at 1. Plaintiff did not request monetary or injunctive relief, instead he sought an "immediate separation" from the individual. Id. There is no genuine dispute of material fact that Plaintiff did not request monetary or injunctive relief in this grievance.

- **Exhibit J – Grievance 793257**

Plaintiff filed this grievance on March 22, 2019 and specifically references this grievance in his Amended Complaint. See [ECF 41, at 8, 40-4]. This grievance was filed months after the timeframe alleged in the Amended Complaint, from December 5, 2018 to December 15, 2018 and involves allegations that Defendant Booher denied him a shower. This grievance does not involve the instant allegations that he was not fed or was subjected to excessive force, however Plaintiff references in this grievance that he previously filed other grievances against the officer involved, Defendant Booher. See Exhibit J, at 1.

Plaintiff does not bring allegations that he was denied a shower in his Amended Complaint and this grievance has no bearing on the instant lawsuit. Nevertheless, even assuming it could be

considered as part of this lawsuit, there is no genuine dispute of material fact that Plaintiff did not request monetary or injunctive relief in this grievance.

Based upon the above, Plaintiff did not request any monetary relief in any grievance related to the allegations in his Amended Complaint and thus procedurally defaulted any current claims for monetary damages. The only request arguably construed as a non-monetary demand would be his requests for a bag of bread and peanut butter and jelly. However, Defendants submit that this request does not satisfy the requirement to request "monetary" damages in a grievance. While any request for monetary relief in a grievance need not be so precise as to set forth a specific dollar amount, the inmate must at least make a clear request for monetary compensation. See Hobson v. Tiller, 2021 WL 2191282, at *8 (W.D. Pa. 2021); Sides v. Pennsylvania Dep't of Corr., 2020 WL 1493549, at *7 (W.D. Pa. 2020). Plaintiff failed to do so.

Plaintiff should also not be entitled to the non-monetary relief he sought through this lawsuit and through grievances. In this action, Plaintiff seeks, among other things, the employment termination of all named defendants. See [ECF 41, at ¶35]. Although not specifically requested as relief in this action, in various grievances Plaintiff sought "emergency separations" or cell moves as a result of the Defendant's alleged actions. Even assuming this Court were to construe these requests as valid requests for injunctive relief, Plaintiffs requests are moot because Plaintiff is no longer in the same position he was when he filed the lawsuit, namely that he was in the RHU during the timeframe alleged in the Amended Complaint and has since been moved back to general population. See Exhibit M – Cell History.

Moreover, as recently observed by this Court in the context of a Motion for a Temporary Restraining Order:

> a request for injunctive relief "must always be viewed with great caution because 'judicial restraint is especially called for in dealing

> with the complex and intractable problems of prison administration.' " Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995) (quoting Rogers v. Scurr, 676 F.2d 1211, 1214 (8th Cir. 1982)). Preliminary injunctive relief is "not a tool for prisoners to use to regulate 'in every way, every day, the terms and conditions of plaintiff's confinement simply because they are "in court" ...' ". Stiel v. Fed. Bureau of Prisons, 2017 WL 2656646, at *4 (D.N.J. June 19, 2017) (quoting Muhammad v. Director of Corrections, 2009 WL 161075, at *1 (E.D. Ca. Jan. 22, 2009)).
>
> Thus, where a plaintiff requests an injunction that would require the Court to interfere with the administration of a prison, "appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief." Rizzo v. Goode, 423 U.S. 362, 379 (1976). The federal courts are not overseers of the day-to-day management of prisons. Prison officials require broad discretionary authority as the "operation of a correctional institution is at best an extraordinarily difficult undertaking." Wolff v. McDonnell, 418 U.S. 539, 566 (1974). Accordingly, prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that are needed to preserve internal order and to maintain institutional security. Beard v. Banks, 126 S. Ct. 2572, 2578 (2006); Bell v. Wolfish, 441 U.S. 520, 527 (1979).

Calipo v. Wolf, 2018 WL 7412835, at *2 (W.D. Pa. Nov. 21, 2018), report and recommendation adopted, 2019 WL 858035 (W.D. Pa. Feb. 22, 2019). The same rationale should be applied in the instant case. Plaintiff seeks as relief employment termination of all named defendants and sought cell moves and separations as relief in grievances filed in this action, relief which would invite this Court to interfere with administration of the prison.

Based upon the above, Plaintiff has procedurally defaulted any claim for monetary and injunctive relief that he currently brings because he failed to request such relief in any initial grievance he filed in relation to this action. See Wright, 2017 WL 3731957, at *6 (observing the failure to specifically request monetary damages as a procedural default). Therefore, because Plaintiff has procedurally defaulted any claims for monetary damages or injunctive relief, there

are no remaining claims for adjudication in the instant action and summary judgment is entirely appropriate for the Defendants in this action.

In the alternative, if this Court were to conclude that Plaintiff did exhaust his administrative remedies in this action, the defendants seek dismissal of certain named defendants for lack of personal involvement.

### B. PLAINTIFF FAILED TO ESTABLISH THE PERSONAL INVOLVEMENT OF DEFENDANTS HARDING AND ANDRACKO

To establish personal liability against a defendant in a section 1983 action, that defendant must have personal involvement in the alleged wrongs. That is, the state actor must have played an affirmative part in the alleged misconduct in order to be subject to liability. Rizzo v. Goode, 423 U.S. 362 (1976); Chavarriaga v. New Jersey Dep't of Corr., 806 F.3d 210, 222 (3d Cir. 2015); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Chincello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986); Alexander v. Fritsch, 2010 WL 1257709 at *15 (W.D. Pa. 2010).

I. **Harding**

The allegations in the Amended Complaint against Harding are scant. Plaintiff introduces Harding as the "Lieutenant" of the RHU who is responsible for all inmates in his housing unit. [ECF 41 at ¶11]. Plaintiff then asserts that Harding was aware of his abuse when "he received grievance number 778577" and responded to this grievance. [ECF 41 at ¶25]. This is insufficient to allege this defendants' personal involvement as the denial of a grievance or mere concurrence in an administrative appeal process is insufficient to establish the personal involvement necessary to impose liability on a defendant. See Simonton v. Tennis, 437 F. App'x 60, 62 (3d Cir. 2011) ("[A] prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right."); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (holding that a state prisoner's

allegation that prison officials and administrators responded inappropriately, or failed to respond to later-filed grievances about his medical treatment, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct). See also Wilkerson v. Schafer, 2011 WL 900994, at *7 (M.D. Pa. 2011) ("participation in after-the-fact review of a grievance or appeal is insufficient to establish personal involvement on the part of those individuals reviewing grievances").

This Court previously acknowledged that a supervisory defendant can have sufficient personal involvement if that defendant reviews a grievance alleging an ongoing issue. See [ECF 34 at 5, citing Mayo v. Oppman, 2018 U.S. Dist. LEXIS 11554, at *8-9 (W.D. Pa. 2018)]. Here, however, Harding responded to one grievance, grievance No. 778577, where Plaintiff complained of missing one meal; he does not reference prior meal denials. See Exhibit H at 1. There was no ongoing issue that Harding otherwise would/should be aware of for purposes of responding to this grievance. There is also no evidence of record that Harding responded to any other grievances related to Plaintiff missing meals. For this reason, Plaintiff failed to sufficiently allege Harding's personal involvement and this defendant should be dismissed from this case and caption.

II. **Andracko**

The factual allegations against defendant Andracko, just as the allegations against Harding, are scant. Plaintiff asserts on December 11, 2018 he spoke with defendant Andracko as she passed out medication. [ECF 41, at 18]. Plaintiff claims he on one sole occasion told defendant Andracko that he had not been fed in three-days and that defendant Andracko stated there was nothing she could do for him. Id. This is defendant Andracko's only alleged involvement in the entire Amended Complaint.

Defendants submit that this one limited verbal interaction, accepted as true, is not sufficient to plead this defendant's personal involvement in the allege harms complained of. Although defendants cannot find affirmative case law to this point, defendants submit that this situation would be akin to responding to a single grievance alleging misconduct, the same situation defendants seek dismissal of Harding from this action. Further, based upon the allegations in the grievance filed in relation to her, 775989, Defendant Andracko either referenced or reviewed the DC-17x which is a document utilized in the RHU to document mealtimes, among other things. See Exhibit C, at 1. Nothing in the record reflects that Defendant Andracko had any affirmative role in the misconduct alleged by Plaintiff. For this reason, Plaintiff failed to sufficiently allege Andracko's personal involvement and this defendant should be dismissed from this case and caption.

WHEREFORE, the Defendants respectfully requests that this Court enter summary judgment in their favor and against Plaintiff on all claims in the Amended Complaint.

Respectfully submitted,

Office of Attorney General
Litigation Section
1521 Waterfront Place
Mezzanine Level

Pittsburgh, PA 15222
praymond@attorneygeneral.gov

Phone: (412) 699-8195
Fax:    (412) 565-3019

Date:  December 6, 2021

s/ Phillip E. Raymond
Phillip E. Raymond
Deputy Attorney General
Attorney ID: 325734

KAREN M. ROMANO
Chief Deputy Attorney General
Civil Litigation Section

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I, Phillip E. Raymond, Deputy Attorney General for the Commonwealth of Pennsylvania, Office of Attorney General, hereby certify that on December 6, 2020, I caused to be served a true and correct copy of the foregoing document titled ***BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT*** to the Plaintiff via First Class Mail.

Smart Communications/ PA DOC
**Stefon Johnson LW-6308**
SCI **Forest**
PO Box 33028
St. Petersburg, FL 33733

                                                    By:    /s/ *Phillip E. Raymond*
                                                                PHILLIP E. RAYMOND
                                                                 Deputy Attorney General

OFFICE OF ATTORNEY GENERAL
1251 Waterfront Place
Mezzanine Level
Pittsburgh, PA 15222