In the United State District Court
For The Western District Of Pennsylvania

Stefon Johnson Jr.
Pro-Se Plaintiff

v.                                               Case No. 1:20-CV-~~144~~ 149

CO1 Lesko, CO1 Booher,
CO1 Termine, CO1 Wilcox,
SGT. Kemp, SGT Moore,
CO4 Gill, LT. Harding,
LPN Andrako

Defendants

FILED
DEC 17 2021
CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

## Plantiffs Pretrial Statement

Rule 16.1(c)(1) of the local rules of this court requires that Plaintiff file a Pretrial Statement.

Date: November 19, 2021

Narrative statement of facts that will be offered at trial orally and in support of documents:

1. The plaintiff was [at Forest] in the RHU when the following events occured.

2. On December 5, 2018 while I the plaintiff was returning from yard being escorted to JC-2022 by two unknown officers, my cellmate [Steven Adams] upon arrival stated that he was sucidial and I was then placed in the top-tier shower on JC-pod at or about 9:30am.

3. On Decemeber 5, 2018 while still in the top-tier shower on JC-pod, lunch trays were being distributed at or around 10:45am. Defendant CO1. Wilcox approached, and asked CO1. Termine who was serving trays on the bottom tier, if plaintiff was "allowed a tray". CO1 Termine then left the pod then returned about a minute later and stated [Sgt.]"Moore said not to feed him" I was never given a tray after I was returned to JC-2022 cell around 11:45am.

4. I, Stefon Johnson was ordered by Sgt. Kemp on December 8, 2018 to pack all my property, and I was moved from JC-2022 to the bottom tier shower, thereafter, JC-1006 cell.

5. Between 4:50-4:54pm CO1. Booher was passing out dinner trays on the bottom tier of JC-pod. CO1. Booher went from JC-1005 cell directly to JC-1007 cell. When I asked this officer why I did not get my tray he stated "Sgt Kemp, said not to feed you or your celly

6. On December 9, 2018 CO1. Booher passed out breakfast trays, he refused to give me a trays.

7. Officer Booher passed out lunch trays, he refused to give me a tray, This officer stated "what is your mother's number, she needs to pay me three hundred dollars, and once she does, you can eat".

8. On December 9, 2018, CO1. Lesko passed out dinner trays on the bottom tier of JC-pod. When this officer came to my door around 5:33pm he stated "I was told to not feed this cell" and walked away.

9. On December 10, 2018, I was denied breakfast, lunch, and dinner. The officers who passed out these meals did not have on name tags, thereby, I filed a grievance but never received the grievance back, and when I want to get my legal mail I stated is this on camera, to the officers?

10. On December 11, 2018 around 4:51am I called L.P.N. Andrako to JC-1006 cell as she was passing out medication, I informed this nurse that the last meal that I was given by officers was on December 8, 2018 at lunch. I also notifyed Ms. Andrako that officers on both shifts, been refusing to feed me. Ms. Andrako then stated "there's nothing that I can do for you, and I have to wait until staff notifies medical after you miss nine meals." I told Ms. Andrako I needed help, and she walked away.

11. On December 11, 2018, CO1. Termine refused to feed me breakfast.

12. On December 11, 2018, CO1. Termine refused to feed me again at lunch.

13. The C.O. who passed out dinner also refused to feed me, and I was unable to get his name because he was not wearing a name tag.

14. On December 11, 2018 CO4 Gill came to the plaintiffs cell between 08:00 -09:00am to conduct a DC-141 misconduct hearing.

15. I the plaintiff notified this defendant of the abuse which I was being subjected to. However, he chose to not put an end to the abuse. This defendant was the R.H.U captain and responded to multiply grievances filed by the plaintiff.

16. On December 12, 2018 CO1 Lesko refused to feed me breakfast stating when he got to my cell JC-1006, that "SGT. Moore said you're fasting and on a hunger strike". I told this officer that I was not fasting, and not on a hunger strike, this officer just walked away without feeding me.

17. CO1 Lesko, refused to feed me lunch as well.

18. CO1 Lesko, refused to feed me again at dinner time.

19. On Decemeber 13, 2018, I was denied breakfast, lunch and dinner by an officer who could not be indentified because they were not wearing name-tags.

20. On December 14, 2018 I was denied breakfast, lunch and dinner by officers who could not be identified because they were not wearing name tags.

21. On December 15, 2018, I was woken to the sound of the cell door being kicked, followed by SGT. Moore, spraying o/c spray into the cell I was housed. SGT. Moore sprayed o/c spray into the cell for approximately 30 seconds.

22. L.T. Harding was aware of the abuse that the plaintiff was being subjected to when he received grievance number 778577. However, his acknowledge of the abuse is clearly proven by his response to the grievance, that I was not refusing to eat.

23. Though the exhibits the plantiff will show with particularity that the defendants committed fruad. Fruad in regards to documenting abuse that the plaintiff was subjected. Also other Department Of Corrections employees intentionally lied on documents, their knowledge of their furad will be shown through testimony of witnesses and offical documentation.

UNUSUAL LEGAL ISSUES

1. Was the Plaintiff deprived of a basic life necessity, and was the deprivation serious serious enough to trigger a violation of the 8th Amendment of the united States Constitution?

1a. Food is one of the basic life necessities of life protected by the 8th Amendment of the United States Constitution.see-Knop v. Johnson, 667 F.Supp. 512, 525(W.D. Mich. 1987), aff'd in pertinent part, 977 F.2d 996, 1000(6th Cir 1922) accord, Keenan V. Hall, 83 F.3d 1083, 1091(9th Cir. 1996), amended, 135 F.3d 1318 (9th Cir.1998)

1b. The deliberate and unnecessary witholding of food essential to maintain normal health can violate the 8th Amendment. This is well supported by case law.See-**Phelps v. Kapnolas, 308 F.3d 180, 187(2d Cir. 2002), Reed v. McBride, 178 F.3d 849, 853-56(7th Cir. 1999), Simmons v. Cook, 154 F.3d 805, 807-09(8th Cir. 1998),Robles v. Coughlin, 725 F.2d 12, 16(2d Cir. 1983), Cunningham v. Jones, 567 F.2d 653, 660(6th Cir. 1977), Moss v. Ward, 450 F.Supp. 591, 596-97(W.D.N.Y. 1978)**

1c.The Goverment violates the 8th Amendment when it "so restrains an individuals liberty that it renderes him unable to care for himself, and at the same time fails to provide for his basic human needs including food and medical care"See- **Helling v. Mckinney, 509 U.S. 25,32,125 L. Ed. 2d. 22,113 S .Ct. 2475(1993)**

2.Were the defendants "Deliberately Indifferent"?

2a. To establish that a prison offical is deliberately indifferent, an inmate must show that the offical was aware of a risk to the inmates health or saftey, and that the offical deliberately disregarded the risk. **"Johnson v. lewis, 217 F.3d 726, 734(9th Cir. 2000)"**

2b. "A fact finder may conclude that a prison officals knows of a substantial risk from the very fact that the risk was obvious" **Farmer, 511 U.S. at 842**"(Exhibit 9)

2c."If a inmate presents evidence of very obvious and blatent circumstances indicating that the prison offical knew the risk existed, then it is proper to infer that the offical must have known of the risk"**Simmons v. Cook, 154 F.3d 805 (8th Cir.1998)**

3. Was the Plaintiff Subjected to excessive force?

3a. The deliberate indifference standard does not apply to cases involving the use of force; In those cases the plaintiff must show that the defendants acted "Maliciously and sadistically"See- **Whitley v. Albers, 475 U.S. 312, 320, 106 S.Ct. 1078(1986)**

3b. The malicous and sadistic use of force even without significant injury is a 8th Amendment violation, as is other treatment that unjustifiably inflicts pain or injury. See-**Hudson v. Mcmillian,502 U.S. 1,7-9 112 S.Ct.995 (1992), Hope v. Pelzer,536 U.S. 730,738,122 S .Ct. 2508(2002)**

4. Did Prison Officals follow their own policies specifically DC-ADM 001, and DC-ADM 804?

3

4a. The Plaintiff followed instructions per DC-ADM 001 "Inmate Abuse" and verbally reported his abuse allegations. Also the Plaintiff reported the abuse on a Inmate Grievance Form in accordance with DC-ADM 804.

4b. The Plaintiffs abuse complaints were not handled in accordance with DC-ADM-804 Section D 1-5.

4c. The Plaintiff followed all procedures for reporting the abuse In Nunez v. Borstner, 2019 U.S. Dist. Lexis 156313 (W.D. Pa. Sept 12 2019) this court concluded that "The D.O.C officials received the Plaintiffs complaints of abuse as defined by it's own policy" "D.O.C did not follow its own DC-ADM 001 Procedure when various employees received complaints".

5. Did Prison Officials follow DC-ADM-13.1.1

5a. The defendants have stated as a defense that the Plaintiff was refusing to eat, and marked in the Plaintiff's DC-17x that the Plaintiff refused meals.

5b. Prison officials not only lied but if for say it were true DC-ADM-13.1.1 Section 8 H defines what prison officials are to do if a Prisoner is refusing to eat. Prison officials did not follow their own policy as it relates to this matter or their defense.

4

## STATEMENT OF ALL DAMAGES AND METHOD OF CALCULATION

1. Compensatory Damages in the amount of 145,000

1a. The method of calculation for Compensatory damages that the Plaintiff used is based on the intentional act by the defendants to starve the plaintiff, and also the unwarranton infliction of pain and long lasting effect of the o/c spray.

1b. The amount of 25,000 for the eye surgery that the Plaintiff will need to correct the damage that was done to his cornea as a direct result of the excessive amount of o/c spray that was sprayed into plaintiffs cell on December 15th 2018.

1c. The amount of 20,000 for the pain and suffering that i was forced to deal with. As a result of the o/c spray i was inable to carry out everyday activities such as read, write, and simply seeing. From the time i was sprayed my vision was very blurry until i was given contacto apprx. 1 1/2 years later.

1d . The amount of 100,000 for the pain and suffering forced onto the Plaintiff by the Defendants. The Defendants intentionaly refused to feed the Plaintiff for 7 consecutive days. Food is a basic life necessity, depriving a human of a basic life necessity for a extended period of time is toture, corporal, and Cruel and Unusual punishment and flat out dehumanizing.

2. Punitive Damages

2a. The method of calculation for Punitive Damages that the Plaintiff used is based on the Defendants actions that without saying were wrongful, malicious, and egregious. Also the excessive amount of o/c spray that was sprayed into the Plaintiffs cell was done for the sole purpose to cause harm to the plaintiff.

2b. The amount of 700,000 for the totality of the Defendants actions and inactions. The Plaintiff was helpless and at the mercy of the Defendants. The Plaintiff could have lost his life due to the Defendants actions. At no point during the seven days did any of the Defendants stop the mistreatment that the plaintiff was being subjected to. Instead the Defendants contiued to starve the plaintiff for unknown reasons. For seven days at 100,000 a day is sufficent.

3. The Defendants nedd to be terminated and should not be allowed to work in the Department Of Corrections ever again.

4. These damages will be proven by documentation, and testimony.

5

- Witnesses, Plaintiff Intends To Call

1. James Jackson, SCI-Forest 286 Woodland Dr. Marienville, PA 16239
1a. Mr. Jackson was the Plaintiffs cellmet during the events surrounding the events alleged in the Plaintiffs Complaint and Amended Complaint. He is a liability and damage witness

2. T. Biel, SCI Forest 286 Woodland Dr. Marienville, PA 16239.
2a. Ms. Biel is the Grievance Coordinator at SCI-Forest now, and at the time the Plaintiff filed Abuse Complaints. Ms. bres is a liability witnesses

3. L. Reeher, SCI-Forest 286 Woodland Dr. Marienville, PA 16239
3a. Ms. Reeher is the Grievance Coordinator at SCI-Forest now, and at the time the Plaintiff filed Abuse Complaints. Ms. Reeher is a liability witnesses.

4. heri Moore, 1920 Technology Parkwy Mechanicsburg, PA 17050
4a. Ms. Moore is the Chief Grievance Officer at Central office now, and at the time the Plaintiff filed Abuse Complaints. Ms. Moore is a liability witnesses

5. Jessica Rankin, SCI Forest 286 Woodland Dr. Marienville, PA 16239
5a. Ms. Rankin is a R.N. who completed a medical assessment on the Plaintiff. Ms. Rankin is a liability and damage Witnesses

6

6. Bonnie E. Bell, SCI-Forest 286 Woodland Dr. Marienville PA 16239

6a. Ms. Bell is a R.N. who completed a medical assessment on the Plaintiff. Ms. Bell is a liability and damage witnesses

7. Defendant Gill
8. Defendant Harding
9. Defendant Moore
10. Defendant Booher
11. Defendant Termine
12. Defendant Andruko
13. Defendant Willcox
14. Defendant Kemp

15. Witnesses 7-14 are defendants who are liability and damage witnesses

16. Captain Carter, SCI-Forest 286 Woodland Dr. Marienville, PA 16234

16a. Mr. Carter received Abuse Complaints from the Plaintiff. Mr. Carter is a liability and damage witnesses

17. Khaled, SCI-Forest 286 Woodland Dr. Marienville PA 16234

17a. Mr. Khaled is the e-man who the Plaintiff verbally reported abuse to. Mr. Khaled is a liability witnesses.

18. Kim Smith, SCI-Forest 286 Woodland Dr. Marienville PA 16234

18a. Ms. Smith is the medical Supervisor at SCI-Forest now, and back in 2018. Ms. Smith is a liability and damage witnesses

7

19. Patricia Coleman, 263 West 17th Street Erie, PA 16502

19a. Ms. Coleman reported Abuse complaints as a third party for the Plaintiff. Ms. Coleman is a liability and damage witnesses

20. Jeffery Coleman, 301 Lake Side Dr. Lake City PA 16423

20a. Mr. Coleman reported Abuse complaints as a third party for the Plaintiff. Mr. Coleman is a liability and damage witnesses

21. Oberlander, SCI-Forest 286 Woodland Drive Marienville PA 16234

21a. Mr. Oberlander is currently the Superintendent at SCI Forest but was a member of the Program Review Comittee during the time of Abuse. Mr. Oberlander is a liability and damage witnesses.

22. Steven Adams

22a. Steven Adams was transferred from SCI-Forest, and the Plaintiff is unable to locate his exact location. Mr. Adams was the Plaintiffs Cellmate during the events that transpired on December 5th 2018. Mr. Adams is a Liability witnesses.

8

- Identification of All Exhibits by Number

Exhibit 1. Grievance # 775095 - 10 Pages
Exhibit 2. Grievance # 775689 - 3 Pages
Exhibit 3. Grievance # 777142 - 2 Pages
Exhibit 4. Grievance # 778577 - 6 Pages
Exhibit 5. Grievance # 776024 - 8 Pages
Exhibit 6. Grievance # 776040 - 2 Pages
Exhibit 7. Grievance # 775898 (6 Pages)
Exhibit 8. Grievance # 779477 - 6 Pages
Exhibit 9. DC-17x - 4 Pages
Exhibit 10. DC-121 Part 3 Report - 2 Pages
Exhibit 11. DC-121 Part 3 Report - 2 Pages
Exhibit 12. DC-ADM-13.8.1
Exhibit 13. DC-ADM-201 - 2 Pages
Exhibit 14. DC-ADM-001 - 2 Pages
Exhibit 15. DC-ADM-804
Exhibit 16. DC-121 Part 2 Report - 4 Pages
Exhibit 17. DC-141 Part 1 Report - 1 Page
Exhibit 18. DC-141 Part 1 Report - 1 Page
Exhibit 19. Job Code For a Corrections Officer 1 - 3 Pages
Exhibit 20. Job Code For a Corrections Officer 2 - 3 Pages
Exhibit 21. Job Code For a Corrections Officer 3 - 4 Pages
Exhibit 22. Job Code For a Corrections Officer 5 - 4 Pages

9

Exhibit 23. Job Code for a Licensed Practical Nurse

Exhibit 24. DC-470B Report - 6 Pages

Exhibit 25. Defendants Responses To Plaintiffs First Request For Admissions - 13 Pages

Exhibit 26. ECR 2018-FRS-00345 videos - 2 DVD's

Exhibit 27. DC-451 Report

Exhibit 28. Responses To Plaintiffs First Request For Production Of Documents - 6 Pages

Exhibit 29. Perpetual Calendar - 2 Pages

Exhibit 30. DC-441 Record - 20 Pages

Exhibit 31. Declaration Of James Jackson (3 Pages)

Exhibit 32. Declaration Of Stefon Johnson Jr. - 1 Page

Exhibit 33. Declaration Of Stefon Johnson Jr. - 1 Page

Exhibit 34. Inmate Query- Cell History (2 Pages)

Exhibit 35. DC-472B Report - 2 Pages

Exhibit 36. DC-457 Report - 2 Pages

1. The Plaintiff may need to add an additional exhibit pertaining to the use of force permitted by prison officials

2. Exhibit 26 is not in the Plaintiffs possession because it is on a disc that the Plaintiff viewed at the Prison.

3. The Plaintiff may need additional Exhibit numbers for request slip correspondences between the Plaintiff, and the Grievance coordinator

# Certificate Of Service

I hereby certify that on December 6th 2021, I caused to mail a true and correct copy of the foregoing document titled "Plaintiff's Pretrial Statement to Jeffrey Coleman the Plaintiff's father who will then file said document with the Clerk of courts and electronically mail a copy to the defendants attorney

Phillip E Raymond
Deputy Attorney General
1251 Waterfront Place
Mezzanine Level
Pittsburgh, PA 15222

Date: December 6th 2021

Stefan Johnson
Pro-se Plaintiff