IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEFON JOHNSON, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:20-cv-149 |
| | ) |
| CO 1 LASKO, et al., | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM ORDER

Plaintiff Stefon Johnson, an inmate in the custody of the Pennsylvania Department of Correction ("DOC"), commenced this *pro se* civil rights action against nine individuals employed at the State Correctional Institute at Forest,[1] where he is incarcerated. In his operative pleading, Plaintiff claims that the Defendants violated his rights under the Eighth Amendment by repeatedly denying him meals over the course of eleven days and by administering O/C spray into his cell on one occasion for a period of thirty seconds. He seeks both compensatory and punitive damages as well as declaratory and injunctive relief. The case has been referred to United States Magistrate Judge Richard A. Lanzillo for pretrial proceedings in accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1), and the Local Civil Rules of this Court.

On December 6, 2021, Defendants filed a motion for summary judgment and supporting materials. ECF Nos. 74-77. As grounds for their motion, Defendants argued that Plaintiff failed to properly exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), and could not demonstrate that two of the named Defendants were personally involved in any alleged wrongdoing. *See* ECF Nos. 74, 75. With regard to the

---

[1] The named Defendants are: "C.O. 1 Lesko," "Sgt. Kemp," "Sgt. Moor," "L.P.N. Andrako," "CO 4 Gill," "Lt. Harding," "C.O. 1 Booher," "C.O. 1 Willcox," and "C.O. 1 Termine."

exhaustion issue, Defendants asserted that Plaintiff had not complied with the requirements of the DOC's policy for inmate grievances, DC-ADM 804. Specifically, Defendants argued that Plaintiff had not appealed certain of his grievances through all three levels of the DOC's review apparatus and had never requested the specific relief he is now seeking in this lawsuit.

In his response to the Defendants' motion, Plaintiff argued that he was not subject to the requirements of DC-ADM 804 because the Defendants' conduct constituted "abuse," which is governed by DC-ADM 001. *See* ECF Nos. 81-83. Defendants then filed their reply in which they disputed the relevance of DC-ADM 001 in this case. ECF No. 84.

On April 26, 2022, Judge Lanzillo issued a Report and Recommendation ("R&R") concluding that the Defendants' motion should be granted. ECF No. 89. On the exhaustion issue, Judge Lanzillo agreed with Defendants that DC-ADM 804 is controlling and that Plaintiff had procedurally defaulted any claim for monetary relief by failing to request such relief in his grievances. Judge Lanzillo found DC-ADM 001 to be facially inapplicable to Plaintiff's food-deprivation claim because, in his view, allegations concerning food deprivation concern an inmate's "conditions of confinement," and such claims are expressly excluded from the scope of DC-ADM 001. Judge Lanzillo then considered Plaintiff's excessive force claim and opined that, while Plaintiff could have exhausted that claim under either DC-ADM 001 or DC-ADM 804, he had opted to do so under the latter policy and, thus, was required to request any desired monetary relief in his grievance. Finally, Judge Lanzillo opined that the record could not support Plaintiff's request for declaratory and injunctive relief because his allegations concerned past misconduct rather than an ongoing violation of his rights. To the extent Plaintiff sought to vindicate the rights of other inmates, Judge Lanzillo reasoned that he lacked standing to do so. And, insofar as Plaintiff sought the termination of any individual Defendant's employment,

Judge Lanzillo noted that courts are reluctant to grant that type of relief, particularly as a form of punishment for past misconduct. *See* ECF No. 89 at 9-14 and n. 5.

Plaintiff filed objections to the R&R on May 10, 2022. ECF No. 90. The undersigned addresses his objections below.

### Standard of Review

"If a party objects timely to a magistrate judge's report and recommendation, the district court must 'make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *EEOC v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017) (quoting 28 U.S.C. §636(b)(1)). To obtain *de novo* review, a party must clearly and specifically identify those portions of the Report and Recommendation to which it objects. *Gooney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). Regardless of whether timely objections are made, district courts may accept, reject, or modify -- in whole or in part -- the magistrate judge's findings or recommendations. 28 U.S.C. §636(b)(1); LCvR 72(D)(2).

### Discussion

In his objections, Plaintiff challenges only that portion of the R&R that addresses his failure to properly exhaust his administrative remedies. Because Plaintiff has not specifically objected to Judge Lanzillo's analysis relative to his request for declaratory or injunctive relief, and because the Court discerns no error in the Magistrate Judge's analysis, the Court will adopt that aspect of the R&R without further discussion. The Court's discussion herein will focus on the issues of exhaustion and procedural default.

Relevantly, the PLRA requires inmates to exhaust available prison grievance procedures before suing in court. 42 U.S.C. § 1997e(a). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with applicable

procedural rules as defined by the prison grievance process itself. *Jones v. Bock*, 549 U.S. 199, 218 (2007). It is the defendant's burden to plead and prove a failure to exhaust, as that is an affirmative defense. *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018). Nevertheless, once the defendant has established an inmate's failure to resort to applicable administrative remedies, "the onus falls on the inmate to show that such remedies were unavailable to him." *Id.* (citation omitted).

At the heart of the parties' disagreement in this case is the interplay between the DOC's policy pertaining to the "Inmate Grievance System" (DC-ADM 804), and the DOC's policy pertaining to "Inmate Abuse" (DC-ADM 001). These two policies have been aptly summarized as follows:

### a. DC-ADM 804

The subject of DC-ADM 804 is "Inmate Grievance System." App'x A at 1. DC-ADM 804 is a multi-level procedure by which an inmate can "seek resolution of problems or other issues of concern arising during the course of confinement." *Id.*

DC-ADM 804 provides a three-step process, and an inmate must follow each of the steps in order to exhaust his administrative remedies under the PLRA. *See Jackson v. Carter*, 813 F. App'x 823, 829 (3d Cir. 2020) ("The DOC has a grievance policy involving a three-step process that an inmate must fully complete in order to properly exhaust his administrative remedies under the PLRA."). The three steps are: (1) initial review by a grievance officer of an inmate grievance; (2) appeal to the facility manager; and (3) final appeal the Secretary's Office of Inmate Grievance Appeals ("SOIGA"). *Pressley v. Huber*, Civ. A. No. 3:08-0449, 2017 WL 1062375, at *2 (M.D. Pa. Mar. 21, 2017).

DC-ADM 804 mandates that inmates must include a statement of facts relevant to the claim and shall identify individuals directly involved in the original grievance. App'x A at 5-6. If an inmate desires compensation or other legal relief typically available from a court, he must request this relief in his grievance. *Id.*

\*\*\*

### b. DC-ADM 001

The subject of DC-ADM 001 is "Inmate Abuse." App'x B at 1. The policy statement is accompanied by a procedures manual. The policy states that "[i]t is the policy of the Department to ensure that an inmate is not subjected to corporal or unusual punishment, or personal abuse or injury." *Id.*

4

> DC-ADM 001 lacks the strict filing provisions of DC-ADM 804, including the time for filing—DC-ADM 001 has no time limit for reporting abuse. The policy provides multiple ways for inmates to report abuse: he can report it verbally or in writing to any staff member, file a DC-ADM 804 grievance, or report it in writing to the Department's Office of Special Investigations and Intelligence (OSII). (DC-ADM 001 at 1-1.) A facility employee who receives a written or verbal notification of an incident of abuse must report it to the Security Office and a Central Office employee who receives such notification must report it to OSII. (DC-ADM 001 at 1-2.)
>
> In all cases, an investigation ensues and is conducted either by the Security Office or OSII. (Id.) DC-ADM 001 includes detailed provisions as to the timing, content and review of investigations. (DC-ADM 001 at 1-2 through 1-5.) It also provides the manner in which the inmate is to be notified of the results of the investigation: if the Security Office conducted the investigation, it is tasked with doing so and, if OSII conducted the investigation, OSII informs the inmate by letter.
>
> *Moore v. Lamas*, Civ. A. No. 3:12-cv-223, 2017 WL 4180378, at *3 (M.D. Pa. Sept. 21, 2017) (internal footnote omitted).
>
> If an inmate files a grievance alleging abuse under DC-ADM 001, the deadline for responding may be extended. App'x B at 11-12. In that case, the grievance officer must provide an initial review response after receiving the results from the OSII. *Id.* at 12.

*Pirl v. Ringling,* No. CV 19-208J, 2021 WL 1964461, at *6–7 (W.D. Pa. Mar. 29, 2021), *report and recommendation adopted*, No. 3:19-CV-208, 2021 WL 4198453 (W.D. Pa. Sept. 15, 2021).

In his R&R, Judge Lanzillo acknowledged that Plaintiff availed himself of the DC-ADM 804 procedures and thus achieved "technical exhaustion." He also found, however, that Plaintiff failed to seek monetary relief in any of his grievances and thereby procedurally defaulted his claims for such relief. ECF No. 89 at 8. *See* DC-ADM 804[2] § 1(a)(11)(d) ("If the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance."); *see also Wright v. Sauers,* C.A. No. 13-358 Erie, 2017 WL 3731957, at *7 (W.D. Pa. August 30, 2017) (holding that plaintiff's failure to set forth the desired monetary or other legal relief on his initial grievance form resulted in a procedural default of any claim for such relief).

---

[2] *See* https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf (last visited Sept. 22, 2022).

Plaintiff does not take issue with the Magistrate Judge's conclusion that he failed to comply with the requirements of DC-ADM 804 by failing to include any request for compensatory or punitive damages in his various grievances. Instead, Plaintiff invokes DC-ADM-001 and insists that he complied with the provisions of that policy, since he reported what amounted to "abuse." Relatedly, he claims that Defendants' conduct created an "emergency." He notes that, pursuant to the DOC's Inmate Handbook, when there is an "emergency," inmates are advised to "speak to the nearest staff person as soon as possible." Inmate Handbook, §II(I), ECF No. 87-1 at 13. In similar fashion, DC-ADM 804 states that the Inmate Grievance System "is not meant to address incidents of an urgent or emergency nature" and, in those situations, "the inmate shall contact the nearest staff member for immediate assistance." DC-ADM 804 §1(A)(2). Plaintiff claims he did so and, thus, fully satisfied any exhaustion requirements under DC-ADM 001.

### A. Alleged Meal Deprivation

With respect to Plaintiff's Eighth Amendment claim predicated on food deprivation, the Court concurs with Judge Lanzillo's conclusion that DC-ADM 001 was not implicated. Plaintiff's allegation that he was denied a meal tray on nearly two dozen occasions between December 5 and December 15, 2018 is certainly serious and concerning. But as Judge Lanzillo persuasively observed, an inmate's "conditions of confinement" are expressly excluded from DC-ADM 001's definition of "abuse" *see* DC-ADM 001 "Glossary of Terms," ECF No. 84-1 at 16, and "[c]laims concerning the deprivation of food in the prison setting relate directly to an inmate's conditions of confinement." ECF No. 89 at 10 (citing authority). Additionally, an allegation concerning the denial of food trays also implicates the "nonperformance of duty by a

staff member" -- another category of claims expressly excluded from the definition of "abuse." See DC-ADM 001 "Glossary of Terms.

The non-applicability of DC-ADM 001 is further shown by an examination of what *is* included within the definition of "abuse." Specifically, "abuse" includes conduct involving:

a. the use of excessive force upon an inmate;

b. the improper use of force upon an inmate;

c. an occurrence of an unwarranted life-threatening act against an inmate; or

d. an articulated verbal or written threat to inflict physical injury directed toward an inmate.

DC-ADM 001 "Glossary of Terms," ECF No. 84-1 at 16. None of these definitions is implicated in this case. The only arguably applicable definition is subsection (c), but even that speaks to a singular "occurrence" of a singular life-threatening "act," as opposed to a continuing course of conduct that could result in harm over time, as is alleged here.

Assuming, however, that a continuing course of conduct can eventually rise to the level of "abuse," such circumstances have not been demonstrated in this case, as there is nothing in the record to support an inference that the Defendants' alleged conduct placed Plaintiff in an urgent or life-threatening situation. Neither Plaintiff's declaration, nor his unverified Amended Complaint make any specific allegation of actual -- as opposed to theoretical -- harm. Instead, the record reveals that Plaintiff's complaints about the denial of meal trays were investigated and addressed through the prison's grievance system, albeit not to Plaintiff's satisfaction.[3] The

---

[3] These records also reflect the administration's position that Plaintiff had been denied meals as a result of being in the shower at meal-time, or as a result of his own threatening and aggressive behavior toward staff, or because of his intentional fasting. *See* ECF Nos. 77-1, 77-3 at 2, 77-8 at 2. Indeed, on one occasion the RHU Captain responding to Plaintiff's grievance indicated that he had personally observed a sign in Plaintiff's cell window stating that he was fasting and then witnessed food trays being handed out, which Plaintiff refused. *See* ECF No. 77-3 at 2.

grievance file further demonstrates that Plaintiff was advised to sign up for sick call if he was experiencing weakness or medical difficulties, ECF No. 77-3 at 7, but there is no indication by Plaintiff that he did so. Nor are there any medical notes or records before the Court to suggest that Plaintiff was suffering physical harm as a result of the alleged food deprivation.

In sum, then, the Court is not persuaded, based on this record, that Plaintiff's food deprivation claim constitutes "abuse" as that term is defined in DC-ADM 001. Because Plaintiff failed to properly exhaust his administrative remedies under DC-ADM 804, his monetary claims arising from that alleged misconduct are procedurally defaulted, and Defendants are entitled to summary judgment. Accordingly, Plaintiff's objections in this respect are overruled.

*B. Alleged Excessive Force*

Plaintiff also contends that his Eighth Amendment excessive force claim was properly exhausted pursuant to DC-ADM 001. Unlike claims arising out of an inmate's conditions of confinement, allegations concerning excessive force or the improper use of force can constitute "abuse" within the meaning of DC-ADM 001. *See* DC-ADM 001 "Glossary of Terms," ECF No. 84-1 at 16. Thus, Plaintiff's Eighth Amendment claim predicated on the improper use of O/C spray does potentially implicate DC-ADM 001.

Although the Magistrate Judge acknowledged that excessive force claims may be exhausted under either DC-ADM 001 or DC-ADM 804, he found that Plaintiff had reported the allegations through the prison's grievance system rather than through other methods authorized by DC-ADM 001. Having so concluded, Judge Lanzillo reasoned that Plaintiff was required to comply with all requirements of the DC-ADM 804 grievance process in order to satisfy the PLRA's exhaustion requirement. *See* ECF No. 89 at 12. Plaintiff objects to this finding, arguing

that he *did* invoke the provisions of the Inmate Abuse policy when he reported the O/C spray verbally to a corrections official.

On this point, the Court finds that Plaintiff's objection is well-taken. The Inmate Abuse Policy states that inmates should report incidents of abuse in one of three ways:

1. report it verbally or in writing to any staff member;

2. file a grievance in accordance with Department policy DC-ADM 804, "Inmate Grievance System;" or

3. report it in writing to the Department's Office of Special Investigations and Intelligence (OSII).

DC-ADM Policy Statement, §IV(D), ECF No. 84-1 at 2. Here, Plaintiff reported the alleged abuse through Grievance No. 779477, but his grievance also indicates that he verbally reported the incident to the RHU Lieutenant "after the situation occurred." ECF No. 80-8. The Magistrate Judge was of the view that this reference could not be considered an actual report of abuse because Plaintiff did not specify in his grievance "whom he spoke to or when he did so." ECF No. 89 at 12 n.4. This Court respectfully disagrees, because Plaintiff's declaration states that he reported his allegation of abuse in accordance with DC-ADM 001 by verbally notifying Lt. Clouser on December 15, 2018. ECF No. 83, ¶16. Defendants challenged this representation in their reply brief, characterizing it as "self-serving," but Plaintiff's sworn statement is consistent with the representation in his grievance that he spoke to the "RHU Lieutenant" following the O/C spray incident. Moreover, Plaintiff's attestation to this fact under penalty of perjury is the only appropriate way for him to prove his allegation, short of obtaining an admission from Lt. Clouser himself. Defendants also protest that Lt. Clouser "appears nowhere in the record," ECF No. 84 at 3, but Defendants do not deny that Lt. Clouser is employed at SCI-Forest, nor did they attempt in their reply brief to present any evidence that would contradict Plaintiff's assertion that

9

he verbally reported the alleged abuse. Accordingly, Plaintiff's assertion that he made an oral report to a staff member concerning the improper and/or excessive use of O/C spray appears to stand as an undisputed fact. As discussed, the improper or excessive use of O/C spray colorably amounts to "abuse," as that term is defined in DC-ADM 001.

Consequently, the record supports a finding that Plaintiff reported an alleged instance of abuse in accordance with DC-ADM 001. It was then incumbent upon any staff member who received Plaintiff's report -- whether orally or through his grievance -- to "complete a DC-121 Report of Extraordinary Occurrence, Part 3, Employee Report of Incident, for distribution to his/her supervisor and the facility's Security Office," DC-ADM 001 §1(B)(1), so that the Security Office could then notify the Office of Special Investigations and Intelligence ("OSII"). *Id*. at §1(C)(a). The OSII would then determine the appropriate investigating route for the allegations. *Id*. at §1(C)(b). This did not occur and, in fact, Defendants acknowledge that Plaintiff's grievance "was not regarded as a complaint of abuse." ECF No. 84 at 3. But that is not the fault of Plaintiff; nothing in the Inmate Abuse policy specifies that the reporting victim must utilize the talismanic term "abuse" in order to trigger the review process under DC-ADM 001.

The Third Circuit "has not considered whether a Pennsylvania prisoner can exhaust his administrative remedies through DC-ADM 001, nor what steps would be necessary under that procedure." *Victor v. Lawler*, 565 F. App'x 126, 129 (3d Cir. 2014). "However, many District Courts in Pennsylvania assume DC-ADM 001 to be an alternative to DC-ADM 804." *Brockington v. Garcia*, No. 3:20-CV-01575, 2022 WL 3142612, at *4 n.4 (M.D. Pa. Aug. 5, 2022) (citing cases); *see also Lewis v. English*, No. CV 20-2790, 2022 WL 407376, at *4 n.3 (E.D. Pa. Feb. 10, 2022) ("Many District Court opinions in Pennsylvania have found that

allegations of abuse do not have to be filed through all levels of the DC-ADM 804 system if the inmate reports abuse through DC-ADM 001.")(citing *Moore v. Lamas*, Civ. A. No. 12-223, 2017 WL 4180378, at *9 (M.D. Pa. Sept. 21, 2017) (collecting cases)). Absent further guidance from our Court of Appeals or the DOC concerning the intended interplay between DC-ADM 001 and DC-ADM 804, the Court will apply the prevailing line of district court opinions to the factual circumstances presented in this case.

In sum, Plaintiff produced uncontested evidence that he reported alleged incidents of abuse to a staff member at SCI-Forest, consistent with the provisions of DC-ADM 001. Under that policy, nothing more was required of Plaintiff. And, to the extent the responsible corrections official failed to comply with the reporting obligations contemplated by DC-ADM 001, any "remedy" that otherwise might have been available to Plaintiff under the Inmate Abuse policy was arguably rendered "unavailable." Regardless, in this Court's estimation, Defendants have not met their burden of proving that Plaintiff failed to properly exhaust his available administrative remedies. Therefore, Plaintiff's Eighth Amendment excessive force claim is not procedurally defaulted, and Defendants' Rule 56 motion is denied as to that claim.[4]

Accordingly, after *de novo* review of the Defendants' motion for summary judgment and all filings related thereto, together with the Report and Recommendation and Plaintiff's objections to the R&R, the following order is entered:

---

[4] Defendants' alternative basis for summary judgment concerned their argument that Defendants Harding and Andracko were not personally involved in any alleged wrongdoing. These Defendants were sued only in relation to Plaintiff's Eighth Amendment food deprivation claim. The Court has already determined that Defendants are entitled to summary judgment on this claim based on Plaintiff's failure to exhaust his available administrative remedies. Accordingly, the Court need not address Defendants' alternative basis for summary judgment.

11

NOW, this 23rd day of September, 2022;

IT IS ORDERED that Defendants' motion for summary judgment, ECF No. [74], is GRANTED as to Plaintiff's Eighth Amendment claim arising out of the alleged denial of meals. Said motion is DENIED insofar as it is directed at Plaintiff's Eighth Amendment claim predicated on the alleged use of excessive force.

IT IS FURTHER ORDERED that the report and recommendation of Magistrate Judge Lanzillo, issued on April 26, 2022, ECF No. [89] shall be, and hereby is, adopted as the opinion of the Court, to the extent set forth herein. Plaintiff's objections to the Report and Recommendation are SUSTAINED insofar as they relate to his Eighth Amendment excessive force claim. In all other respects, Plaintiff's objections are OVERRULED.

                                                                                            Susan Paradise Baxter
                                                                                           United States District Judge

cm:    Stefon Johnson, Jr.
        LW6308
        SCI Forest
        PO Box 945
        286 Woodland Dr.
        Marianville, PA 16234
        (via First Class U.S. Mail)

        Counsel of Record
        United States Magistrate Judge Richard A. Lanzillo
        (via CM/ECF)